IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs March 1, 2005

**STATE OF TENNESSEE v. QAWI  NUR, (a/k/a DARRIUS JAMES)**

**Direct Appeal from the Criminal Court for Shelby County**
**No. 02-06231     Chris Craft, Judge**

_____

**No. W2004-01259-CCA-R3-CD  - Filed June 21, 2005**

_____

Defendant, Qawi Nur, a/k/a/ Darrius James, was indicted on one count of first degree felony murder and one count of first degree premeditated murder.  The State filed a notice of intent to seek the death penalty. Following a jury trial, Defendant was convicted of first degree felony murder in count one and second degree murder in count two.  The trial court merged Defendant's second degree murder conviction into his first degree felony murder conviction.  The jury sentenced Defendant to life imprisonment without the possibility of parole for his first degree murder conviction.  The sole issue raised on appeal challenges the sufficiency of the convicting evidence.  After a thorough review of the record, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Trial Court Affirmed**

THOMAS T. WOODALL, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and J.C. MCLIN, JJ., joined.

Robert Wilson Jones, District Public Defender; W. Mark Ward, Assistant Public Defender, Larry Nance, Assistant Public Defender; and Diane Thackery, Assistant Public Defender,  Memphis, Tennessee, for the appellant, Qawi Nur, a/k/a Darrius James.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; William L. Gibbons, District Attorney General; Michelle Parks, Assistant District Attorney General; and James Wax, Assistant District Attorney General, for the appellee, the State of Tennessee.

**OPINION**

Christie Lee Holmes was the girlfriend of the victim, David Romanoli.  Immediately prior to the shooting, Ms. Holmes, the victim, the victim's younger brother, James, and his friend, Steven Inglis, were sitting in a bathroom in the victim's second floor apartment smoking marijuana.  The group heard someone kick the front door open.  The victim left the bathroom, and Ms. Holmes heard him call out, asking who the intruder was and what he or she wanted.

Ms. Holmes followed the victim as he ran down the stairs after the intruder. When she reached the ground floor, Ms. Holmes saw a black car drive by with its doors open. A woman was running after the car, trying to flag it down. Ms. Holmes chased the woman. The woman stopped, and an African-American man stepped out of some bushes near the apartment building. Ms. Holmes said that the woman told the man "to shoot [Ms. Holmes], shoot her, pop a cap in her ass, too." Ms. Holmes saw that the man was unarmed and demanded his name. The man and woman ran away.

Ms. Holmes identified Defendant and Melissa Swift from photo line-ups as the man and woman she encountered outside the victim's apartment building. Ms. Holmes said that Defendant was wearing a white shirt, baggy jeans, and tennis shoes when she saw him. Ms. Holmes did not see the shooting nor did she hear gunshots.

David Barnwell, the victim's neighbor, said that he heard gunshots and stepped out onto his second floor patio. He saw a woman run past his apartment followed by an African-American man wearing baggy jeans and a red baseball cap.

Officer Hope Bebout with the Memphis Police Department found a red cap in a bush next to the apartment building. A pair of red nylon sweat pants and a bandana were also found behind the building. Officer Robert Harris found a .38 caliber revolver in a bush next to the apartment building's back stairwell. Officer Sherman Bonds said that the .38 caliber revolver had four spent casings and two live rounds. Heath Barker, a special agent with the Tennessee Bureau of Investigation, testified that the bullet removed from the victim's body during the autopsy was fired from the .38 caliber revolver found at the crime scene.

Nina Sublette, a nurse practitioner, took a blood sample from Defendant for the purpose of DNA sampling. Special Agent Lawrence James attempted to obtain a DNA sample from the clothes found at the crime scene. Agent James was unable to secure a sample from the pants or bandana. The DNA sample taken from the red cap contained DNA from two contributors, one of whom was possibly Defendant. The DNA analysis indicated that the probability of obtaining that mixed profile from the African-American population is approximately one in eight. Although the DNA sample did not conclusively match Defendant's, he could not be excluded as a contributor.

Dr. Teresa Allen Campbell performed the victim's autopsy. Dr. Campbell said that the cause of death was a gunshot wound to the right side of the chest. The bullet struck the victim's left lung and aorta and did not exit the body. There was no soot around the wound indicating that the shooter was more than two feet from the victim when the gun was discharged.

Melissa Swift testified that she was indicted for first degree felony murder in connection with the victim's shooting, but pled guilty to the lesser included offense of facilitation of first degree felony murder. On the afternoon of the shooting, Ms. Swift met Coty Childress and Jennifer Mohrhoff at a gas station, and invited the women to her apartment to smoke marijuana. When the marijuana was gone, Ms. Childress said that the victim had a supply of marijuana and suggested that

the group rob him. Ms. Swift called Defendant and asked him to go with the women. The three women picked Defendant up at his apartment and then drove to the victim's apartment building.

Ms. Swift said that she and Defendant went upstairs and knocked on the victim's front door. No one answered, and the two returned to the car. Defendant and Ms. Childress then went up the stairs while Ms. Swift waited outside. Ms. Childress knocked on the door, and, once again, no one answered. Defendant kicked the front door down. Ms. Childress and Defendant went inside the apartment but ran back out in a few seconds. Defendant pushed Ms. Childress into Ms. Swift as he ran down the stairs. Ms. Childress hurt her ankle and ran toward the car. Ms. Swift said a man came down the stairs behind Defendant and Ms. Childress.

Ms. Swift ran around the corner of the apartment building. She saw Defendant coming toward her with a gun in his hand. Ms. Swift said that she heard gunshots but did not see Defendant shoot the victim. Defendant took off some of his clothes and hid the clothes and gun behind the apartment building. Ms. Swift said that she and Defendant got back into the car and returned to Ms. Swift's apartment. When he got into the car, Defendant said, "I think I shot him." Ms. Swift said that she was not armed that afternoon.

On cross-examination, Ms. Swift said that she saw Ms. Holmes as she ran away from the scene. Ms. Swift said she initially thought that the victim had fired a gun. She did not see Defendant's gun when he first got in the car prior to the incident. Defendant left Ms. Swift's apartment, and Ms. Swift and her friends ate dinner at a local restaurant.

Ms. Mohrhoff said that she was indicted for facilitation of first degree felony murder in connection with the shooting. Ms. Mohrhoff generally confirmed Ms. Swift's description of the sequence of events that afternoon. Ms. Mohrhoff said that she and her friends, April Smith and Coty Childress, saw Ms. Swift and her friend, Dara Wiginton, at a gas station, and the group went to Ms. Swift's apartment to smoke marijuana. Ms. Mohrhoff said that Ms. Childress told them where they could get some more drugs. Ms. Mohrhoff drove Ms. Smith's car first to Defendant's apartment and then the victim's. Ms. Wiginton and Ms. Smith stayed behind at Ms. Swift's apartment.

Ms. Mohrhoff said that Ms. Swift and Defendant went to the victim's apartment on the second floor and knocked on the door. When no one answered the knock, Ms. Swift and Defendant came back downstairs. Ms. Childress and Defendant then went upstairs and knocked on the door. Ms. Mohrhoff said that Defendant came running down the stairs followed by Ms. Childress. The victim chased Ms. Swift and Defendant around a corner of the apartment building, and Ms. Mohrhoff heard gunshots. She and Ms. Childress drove off.

Ms. Mohrhoff said that she had trouble driving because she was so nervous, and pulled the car over to the side of the street. She saw Ms. Swift and Defendant run up behind the car. Both of them got in, and Ms. Swift directed Ms. Mohrhoff to drive back to Ms. Swift's apartment. Defendant said that he had fired his gun but did not know whether or not he had shot the victim.

-3-

Ms. Mohrhoff said that Defendant was wearing red pants and a tee shirt when he first got into the car, but she did not remember whether or not he was wearing a hat. Ms. Mohrhoff remembered seeing another woman at the crime scene that afternoon. Ms. Mohrhoff said that news of the shooting was on television that night, but the license plate number of the car reportedly seen at the scene was not Ms. Smith's. The group ate dinner at a local restaurant and then returned to Ms. Swift's apartment. Ms. Mohrhoff's next-door neighbor called and said that the police had Ms. Smith's license plate number. The police were waiting at Ms. Mohrhoff's apartment when she, Ms. Smith, and Ms. Childress arrived.

Defendant argues that the evidence was insufficient to identify him as the perpetrator of the shooting. Defendant concedes that one eyewitness and the two accomplices identified him as the shooter but contends that this evidence is not sufficient to support a finding of guilt beyond a reasonable doubt.

When a defendant challenges the sufficiency of the convicting evidence, we must review the evidence in a light most favorable to the prosecution in determining whether a rational trier of fact could have found all the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S.307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979). Once a jury finds a defendant guilty, his or her presumption of innocence is removed and replaced with a presumption of guilt. *State v. Black*, 815 S.W.2d 166, 175 (Tenn. 1991). The defendant has the burden of overcoming this presumption, and the State is entitled to the strongest legitimate view of the evidence along with all reasonable inferences which may be drawn from that evidence. *Id.; State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The jury is presumed to have resolved all conflicts and drawn any reasonable inferences in favor of the State. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn. 1984). Questions concerning the credibility of witnesses, the weight and value to be given the evidence, and all factual issues raised by the evidence are resolved by the trier of fact and not this court. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

Defendant was convicted of first degree felony murder which, as relevant to the case *sub judice,* is defined as "[a] killing of another committed in the perpetration of or attempt to perpetrate any . . . burglary . . . ." Tenn. Code Ann. §39-13-202(a)(2). A burglary is committed when a person enters a building without the consent of the owner with the intent to commit a felony. *Id*. § 39-14-402(a)(1). Especially aggravated burglary is defined as a burglary of a habitation where the victim suffers serious bodily injury. Tenn. Code Ann. § 39-13-404(a).

The State's proof rested primarily on the testimony of Defendant's two accomplices and the corroboration of the eyewitness to identify Defendant as the perpetrator of the offense. It is well settled that a conviction may not rest solely on an accomplice's uncorroborated testimony. *State v. Shaw*, 37 S.W.3d 900, 903 (2001). The proof necessary to corroborate the accomplice's testimony must include "some fact testified to, entirely independent of the accomplice's testimony, which, taken by itself, leads to the inference, not only that a crime has been committed, but also that the

defendant is implicated in it; and this independent corroborative testimony must also include some fact establishing the defendant's identity." *Id*. (quoting *State v. Bigbee*, 885 S.W.2d 797, 803 (Tenn. 1994)).

Ms. Holmes testified that she followed the victim down the stairs to the ground floor. When she reached the bottom of the stairs, Ms. Holmes saw a woman and a man running away from the apartment building whom she later identified as Defendant and Ms. Swift. Ms. Holmes said that Ms. Swift told Defendant "to shoot [Ms. Holmes], shoot her, pop a cap in her ass, too," but Defendant was not armed at that time. Corroborating evidence need not be sufficient in and of itself to support a conviction as long as it fairly connects the defendant with the commission of the crime. *State v. Gaylor*, 862 S.W.2d 546, 522 (Tenn. Crim. App. 1992). Ms. Holmes corroborated Ms. Swift's and Ms. Muhrhoff's testimony that Defendant was in the victim's apartment building and later ran away from the crime scene with Ms. Swift. Ms. Holmes' testimony implicates Defendant in the shooting and positively identifies him as a participant. Whether the testimony of an accomplice is sufficiently corroborated is a question for the jury. *State v. Heflin*, 15 S.W.3d 519, 524 (Tenn. Crim. App. 1999). Based on our review of the record, the evidence is sufficient to support a finding that Ms. Swift's and Ms. Muhrhoff's testimony was sufficiently corroborated.

Ms. Swift and Ms. Muhrhoff testified that they picked up Defendant and drove to the victim's apartment to steal marijuana. Defendant kicked down the victim's door and soon came running back down the stairs with the victim behind him. Both women heard gunshots. Ms. Swift rounded the corner of the apartment building and saw Defendant with a gun in his hand. Ms. Swift saw Defendant hide the gun at the back of the building. The gun later retrieved from a bush in this area was determined to be the weapon which fired the fatal shot. Ms. Muhrhoff said Defendant was wearing red pants when he joined the group, and a pair of red nylon sweat pants was found in a bush behind the victim's apartment building. Defendant told Ms. Swift and Ms. Muhrhoff that he had fired his weapon but did not know whether he hit the victim.

Viewing the evidence in a light most favorable to the State, we find that the evidence was sufficient to support Defendant's conviction of first degree felony murder beyond a reasonable doubt.

**CONCLUSION**

The judgment of the trial court is affirmed.

_____
THOMAS T. WOODALL, JUDGE